IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**OAKLEY GRAINS, INC.,** *et al.*                                                            **PLAINTIFFS**

v.                                      Case No. 4:17-cv-00717-KGB

**GARY SHUMATE,** *et al.*                                                                   **DEFENDANTS**

**ORDER**

Before the Court are several motions filed by interpleader plaintiffs Oakley Grain, Inc., and Bruce Oakley, Inc. (collectively "Oakley plaintiffs"). Before the Court are Oakley plaintiffs' motion to tender funds and for an injunction under 28 U.S.C. § 2361, attorney fees, and costs; motion for attorney fees and court costs; first amended motion for attorney fees and court costs; and motion for partial default judgment against interpleader defendant Jimmy Jon Weinmiller Jr. (Dkt. Nos. 19, 20, 22, 24, 38). Separate interpleader defendants Gary Shumate and G2 Terra Firma, LLC ("G2"), responded to the motions for preliminary injunction and attorney fees and court costs (Dkt. Nos. 26, 27, 28). Also before the Court is interpleader defendant Farm Credit Services of America's ("FCSA") motion to dismiss plaintiffs' interpleader complaint (Dkt. No. 34). Oakley plaintiffs responded to FCSA's motion to dismiss (Dkt. No. 36).

For the following reasons, the Court grants Oakley plaintiffs' motion to tender funds and for an injunction under 28 U.S.C. § 2361, attorney fees, and costs; motion for attorney fees and court costs; and first amended motion for attorney fees and court costs (Dkt. No. 19, 20, 22, 24). The Court refers the motion for partial default judgment against defendant Mr. Weinmiller to the Clerk of Court for consideration (Dkt. No. 38). The Court grants FCSA's motion to dismiss plaintiffs' interpleader complaint (Dkt. No. 34).

I.      **Factual And Procedural Background**

This is an interpleader action pursuant to 28 U.S.C. § 1335. Oakley plaintiffs are corporations located in Arkansas (Dkt. No. 1, ¶ 1). Oakley Grain, Inc., is a United States Department of Agriculture ("USDA") licensed grain warehouse (*Id.*). Oakley plaintiffs allege that in the course and scope of their business they have come into possession of soybeans, in which interpleader defendants may claim an interest (*Id.*, ¶ 11). Oakley plaintiffs claim that they are a mere stakeholder and, except for warehouse liens for storage, do not claim an interest in the grain held or proceeds of the grain (*Id.*). Oakley plaintiffs further claim that they have reasonable concerns and fears of possible exposure to multiple and contradictory or offsetting claims to the grain or grain proceeds; desire to deposit the grain or grain proceeds with the Court, pursuant to § 1335; and desire to withdraw from the proceedings (*Id.*).

Oakley plaintiffs allege that, on October 27, 2017, four loads of soybeans were delivered to Oakley plaintiffs by or on behalf of interpleader defendants Mr. Shumate or G2 (*Id.*, ¶ 12, Ex. 1-4). Oakley plaintiffs allege that they received a claim on soybeans from interpleader defendant Larry J. Pribil, a/k/a Jerome Pribil, on October 27, 2017 (*Id.*, ¶ 14, Ex. 5). Oakley plaintiffs also allege that they received a Farm Products Security Interest Notice from FCSA (*Id.*, ¶ 15, Ex. 6). FCSA's Security Interest Notice was prepared on August 15, 2017, and states that FCSA claims a security interest in soybeans, along with several other farm products, of Mr. Pribil and interpleader defendant JP Livestock, Inc. ("JP Livestock") (*Id.*, Ex. 6).

Oakley plaintiffs describe the specific *res* in controversy as $54,053.00, which is the priced proceeds of 5,762.12 bushels of soybeans that were delivered to Oakley plaintiffs by Mr. Shumate or G2 (Dkt. No. 19, ¶ 3). According to the complaint, Mr. Shumate, G2, and Mr. Weinmiller are

residents of Arkansas (Dkt. No. 1, ¶¶ 2, 3, 8). Mr. Pribil, JP Livestock, and FCSA are residents of Nebraska (Dkt. No. 1, ¶¶ 4, 5, 6, 7).

After filing their complaint (Dkt. No. 1), Oakley plaintiffs filed a motion to tender funds and for an injunction under 28 U.S.C. § 2361, attorney fees, and costs (Dkt. Nos. 19, 20). They subsequently filed additional motions for attorney fees (Dkt. Nos. 22, 24). Mr. Shumate and G2 responded (Dkt. Nos. 26-28). FCSA filed a motion to dismiss the interpleader complaint as to FCSA (Dkt. No. 34), to which Oakley plaintiffs responded (Dkt. No. 36).

Mr. Weinmiller has not answered or otherwise responded to Oakley plaintiffs' complaint. Oakley plaintiffs served Mr. Weinmiller individually (Dkt. No. 18). Oakley plaintiffs have now filed a motion for partial default judgment against Mr. Weinmiller (Dkt. No. 38).

## II. Subject Matter Jurisdiction

In their complaint, Oakley plaintiffs maintain that they are a mere stakeholder and, except for warehouse liens for storage, do not claim an interest in the grain held or proceeds of the grain, as described in the complaint (Dkt. No. 1, ¶ 11). Oakley plaintiffs assert that they have reasonable concerns and fears of possible exposure to multiple and contradictory or offsetting claims to the grain or grain proceeds (*Id.*). Oakley plaintiffs desire to deposit the grain or grain proceeds with the Court, pursuant to 28 U.S.C. § 1335, and withdraw from the proceedings (*Id.*).

Federal statutory interpleader applies where a plaintiff is in possession of "money or property of the value of $500 or more" and "[t]wo or more adverse claimants, of diverse citizenship . . . are claiming or may claim to be entitled to such money or property. . . ." 28 U.S.C. § 1335; *see State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 530 (1967). "This provision has been uniformly construed to require only 'minimal diversity,' that is, diversity of citizenship between

3

two or more claimants, without regard to the circumstance that other rival claimants may be co-citizens." *State Farm*, 386 U.S. at 530.

Interpleader is a two-stage process. During the first stage, the court decides whether interpleader is available by determining "whether the prerequisites to rule or statutory interpleader have been met by examining such things as the citizenship of the litigants, the merits of the asserted threat of multiple vexation, and, if interpleader is sought under the statute, the sufficiency of the stakeholder's deposit or bond." Charles Alan Wright, et al., 7 Fed. Prac. & Proc. Civ. § 1714 (3d ed.) (West 2013). The Court then proceeds to the second stage to determine the respective rights of the claimants to the fund at issue. *Id*.; *United States v. High Tech. Products, Inc.*, 497 F.3d 637, 641 (6th Cir. 2007). Discharge is available at the conclusion of the first stage.

Once the Court decides that interpleader is available, "it may issue an order discharging the stakeholder, if the stakeholder is disinterested, enjoining the parties from prosecuting any other proceeding related to the same subject matter, and directing the claimants to interplead . . . ." Charles Alan Wright, et al., 7 Fed. Prac. & Proc. Civ. § 1714 (3d ed.) (West 2013). When the stakeholder does not assert a claim to the stake, "the stakeholder should be dismissed immediately following its deposit of the stake into the registry of the court. That dismissal should take place without awaiting an adjudication of the defendants' competing claims." *Hudson Sav. Bank v. Austin*, 479 F.3d 102, 107 (1st Cir. 2007) (citations omitted).

The Court finds that interpleader is proper. Oakley plaintiffs have met the statutory requirements of: (1) an amount in controversy of $500.00 or more, (2) diversity between any two adverse claimants, and (3) depositing the money at issue into the registry of the Court. 28 U.S.C. § 1335(a). Here, the grain proceeds are $54,053.00, which far exceeds the amount in controversy requirement of $500.00. The adverse claimants in this case are from Arkansas and Nebraska,

satisfying the requirement of minimal diversity. Finally, Oakley plaintiffs have moved the Court to order Oakley plaintiffs to deposit the specific *res* in controversy into the registry of the Court. Oakley plaintiffs also have shown a legitimate fear of "multiple vexation" directed against a single fund by identifying adverse parties who claim or could have attempted to claim the grain proceeds. *See Rhoades v. Casey*, 196 F.3d 592, 601 (5th Cir. 1999) ("This was a proper interpleader action. There was a single fund, the [employees stock ownership plan] benefits, with several adverse parties who could have attempted to claim these funds."); *Dakota Livestock Co. v. Keim*, 552 F.2d 1302, 1306 (8th Cir. 1977) ("The interpleader statute . . . [is] designed to protect stakeholders not only from double or plural liability *but also from duality or plurality of suits*, and . . . [is] to be construed liberally." ) (emphasis added).

For the purposes of perfecting its jurisdiction over this action, the Court orders that Oakley plaintiffs are authorized to deposit the $54,053.00 in their possession, that is in issue in this case, into the registry of the Court. Upon Oakley plaintiffs deposit of the specific *res* in controversy, Oakley plaintiffs will be discharged from any further liability regarding the grain proceeds described in the complaint and dismissed with prejudice from this case.

**III.  FCSA's Motion To Dismiss**

The Court will next address FCSA's motion to dismiss plaintiffs' interpleader complaint as to FCSA (Dkt. No. 34). FCSA contends that it is not a proper party to interplead in this matter because it does not have a claim of ownership to the property described in Oakley plaintiffs' complaint — the specific crops, grains, and/or proceeds which form the basis of Oakley plaintiffs' complaint (Dkt. No. 35, at 2). In response, Oakley plaintiffs argue that FCSA is a proper party (Dkt. No. 36, ¶ 3). Oakley plaintiffs assert that FCSA served Oakley plaintiffs with a lien notice under 7 U.S.C. § 1361 for the 2017 crop year as to Mr. Pibil, before delivery of soybeans to Oakley

5

(Dkt. No. 36, ¶ 3). Oakley plaintiffs further assert that Mr. Pibil served Oakley plaintiffs with a lien claim shortly after delivery of soybeans to Oakley plaintiffs (*Id.*). A copy of the FCSA Farm Products Security Interest Notice is attached to Oakley plaintiffs' complaint (Dkt. No. 1, at 9 (Exhibit 6)).

"The requirement of § 1335 that there be adverse claimants of diverse citizenship is jurisdictional, and if claimant diversity hinges upon the citizenship of one party, and if that party is not an adverse claimant, the interpleader court has no jurisdiction and must dismiss the complaint." *Dakota Livestock Co. v. Keim*, 552 F.2d 1302, 1306 (8th Cir. 1977). "Normally, when a defendant in an interpleader action files a declaration disclaiming any interest in the funds deposited in court by the complainant, that defendant has no further interest or legal standing in the action." *Amoco Production Co. v. Aspen Group*, 189 F.R.D. 614, 616 (D. Colo. 1999); *see also Great Lakes Auto Ins. Group of Chicago, Ill. v. Shepherd*, 95 F. Supp. 1, 5 (W.D. Ark. 1951) (dismissing an interpleader defendant who made "no claim to the fund deposited in the interpleader action.").

When an interpleader defendant holds an interest in property held by another party to the action, the interpleader defendant may satisfy its interest through either the proceeds of the interpleader property or assets held by the debtor that are not at issue in the interpleader. *See Airborne Freight Corp. v. U.S.*, 195 F.3d 238, 241-42 (5th Cir. 1999) (concluding that the creditor holder of a general judgment against a solvent debtor, not a judgment against the stake, may not be forced to attempt to satisfy the general judgment against the stake through an interpleader action but instead may satisfy the general judgment out of other assets held by the solvent judgment debtor).

In this case, FCSA has disclaimed any interest in the proceeds of the soybeans at issue in this case held by Oakley plaintiffs. Even though FCSA sent Oakley plaintiffs a copy of a Security Interest in soybeans and other farm products of Mr. Pribil and JP Livestock, FCSA makes no claim to proceeds of the specific soybeans, or soybean proceeds, at issue in this case. The Court relies on FCSA's representation as to any claim to the specific soybeans and proceeds of the specific soybeans at issue in this case when ruling on FCSA's pending motion to dismiss. The Court determines FCSA has no claim to the specific soybeans and proceeds of the specific soybeans at issue in this case.

Because Mr. Pribil and JP Livestock are Nebraska residents and all other interpleader defendants are from Arkansas, diversity jurisdiction is satisfied in this case, even without FCSA as an interpleader defendant. For these reasons, the Court grants FCSA's motion to dismiss plaintiffs' interpleader complaint and dismisses plaintiffs' interpleader complaint as to defendant FCSA only (Dkt. No. 34).

**IV.     Oakley Plaintiffs' Motion For Default Judgment**

The Court will now address Oakley plaintiffs' motion for partial default judgment against Mr. Weinmiller (Dkt. No. 38). Oakley plaintiffs assert that Mr. Weinmiller was served individually on December 28, 2017 (Dkt. No. 18). Mr. Weinmiller has not appeared, answered, or otherwise responded to Oakley plaintiffs' complaint. For these reasons, Oakley plaintiffs' request that the Court enter a default judgment against Mr. Weinmiller.

Rule 55 of the Federal Rules of Civil Procedure contemplates a two-step process for the entry of default judgments. *Fraserside IP L.L.C. v. Youngtek Solutions Ltd.*, 796 F. Supp. 2d 946, 951 (N.D. Iowa 2011) (citation and internal quotation marks omitted). First, pursuant to Rule 55(a), the party seeking a default judgment must have the Clerk of Court enter the default by

7

submitting the required proof that the opposing party has failed to plead or otherwise defend. *Id.* Second, pursuant to Rule 55(b), the moving party may seek entry of judgment on the default under either subdivision (b)(1) or (b)(2) of the rule. *Id.* Entry of default under Rule 55(a) must precede a grant of default judgment under Rule 55(b). *Id.*

Here, because there is not a Clerk's entry of default against Mr. Weinmiller, the Court construes Oakley plaintiffs' motion as one for entry of default by the Clerk of Court and for entry of default by this Court. Accordingly, the Court hereby refers the motion to the Clerk of Court for consideration. To consider a motion for default under Rule 55(a), the Clerk requires an affidavit or affirmation setting forth proof of service, including the date thereof; a statement that no responsive pleading has been received within the time limit set by the Federal Rules of Civil Procedure or as fixed by the Court; and a statement that the defendant against whom default is sought is not in military service, as required by 50 App. U.S.C. § 521. The Court notes that Oakley plaintiffs filed an affidavit along with the present motion (Dkt. No. 38-1).

### V. Attorneys' Fees And Costs

Also, before the Court are Oakley plaintiffs' motion for attorney fees and court costs and first amended motion for attorney fees and court costs (Dkt. Nos. 22, 24). Separate interpleader defendants Mr. Shumate and G2 responded to both of Oakley plaintiffs' motions (Dkt. Nos. 27, 28).

A district court's decision to award attorney fees "rests within the sound discretion of the [district] court." *Federated Mt. Ins. Co. v. Moody Station and Grocery*, 821 F.3d 973, 979 (8th Cir. 2016). "[C]ourts have long awarded attorney fees and costs to a disinterested stakeholder out of an interpleaded fund." *Millers Mut. Ins. Ass'n of Illinois v. Wassall*, 738 F.2d 302, 304 (8th Cir. 1984). "The institution of a suit in interpleader, including the depositing of the fund in the registry

of the court and the procuring of an order of discharge of the stakeholder from further liability, does not usually involve any great amount of skill, labor or responsibility, and, while a completely disinterested stakeholder should not ordinarily be out of pocket for the necessary expenses and attorney's fees incurred by him, the amount allowed for such fees should be modest." *Hunter v. Federal Life Ins. Co.*, 111 F.2d 551, 557 (8th Cir. 1940).

As Oakley plaintiffs discuss in their brief, "[t]he starting point in determining attorney fees is the lodestar, which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates." *Fish v. St. Cloud State University*, 295 F.3d 849, 851 (8th Cir. 2002) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The party seeking an award of fees has the responsibility of submitting evidence to support the number of hours worked and rates claimed. *Hensley*, 461 U.S. at 433. "A reasonable hourly rate is usually the ordinary rate for similar work in the community where the case has been litigated." *Fish*, 295 F.3d at 851.

For interpleader stakeholders, "[r]ecoverable expenses are properly limited to the attorney fees billed to prepare the complaint, obtain service of process on the claimants to the fund, and secure the plaintiff's discharge from liability and dismissal from the lawsuit." *Dusseldorp v. Ho*, 4 F. Supp. 3d 1069, 1071 (S.D. Iowa 2014). Other courts have determined that certain services are not recoverable in interpleader cases. *See Hartford Fire Ins. Co. v. Professional Men's Inv., Inc.*, 337 F.2d 1011, 1012 (3rd Cir. 1964) (finding that "the attorney's additional professional services for his client" were not recoverable); *Ferber Co. v. Ondrick*, 310 F.2d 462, 467 (1st Cir. 1962) (finding that time spent by stakeholder's attorney answering a counterclaim was not recoverable); *Dusseldorp*, 4 F. Supp. 3d at 1072 (find that "the initial investigation of underlying facts in the case prior to the actual filing of the interpleader action" was not recoverable).

9

After review of Oakley plaintiffs' motions for attorney fees and court costs, the Court concludes that Oakley plaintiffs are not entitled to the claimed amount of fees and costs. As an initial determination, the Court finds that the itemized list of time spent by Oakley plaintiffs' counsel is equal to 19.29 hours, not the 19.59 hours listed in the motion (Dkt. No. 24, at 3). Also, counsel for Oakley plaintiffs has included several attorney services that are not recoverable based on the standards for attorney fees in interpleader cases. The Court finds that the 1.2 hours counsel for Oakley plaintiffs spent on "oakley nlr; meetings jon oakley grain manager; facts work" on October 27, 2017, is unrecoverable because it relates to the initial investigation of the underlying facts prior to the filing of the complaint (Dkt. No. 24, at 3). The Court also finds that the .83 hour spent on "fact work; custon cutting status shumate; priced grain; basis review; two accounts at oakley grain" on November 20, 2017, is unrecoverable because it relates to the investigation of underlying facts (Dkt. No. 24, at 2). The Court also finds that the 1.17 hours counsel for Oakley plaintiffs spent on "oakleya nlr jon; bearskin elevator status; t/c rodders atty shumate; case work" on November 29, 2017, is unrecoverable because it does not appear that all hours billed related to preparing the complaint, obtaining service of process, and securing plaintiffs' discharge from liability and dismissal from this lawsuit (*Id.*). This totals 3.2 hours. By making this determination, the Court "is not suggesting that the services were unnecessary or that they did not benefit Plaintiffs; rather, the Court has merely made the determination that, under applicable law, they are not recoverable." *Dusseldorp*, 4 F. Supp. 3d at 1072.

The Court finds that the remaining 16.09 hours worked by counsel for Oakley plaintiffs are recoverable based on the work necessary to facilitate this interpleader case. The Court also finds that counsel for Oakley plaintiffs is entitled to an hourly rate of $250.00 based on the

attorney's experience and the complexity of the case. The Court awards Oakley plaintiffs $4,022.50 in attorney fees.[1]

The Court has also reviewed the itemized list of court costs in the motion and concludes that Oakley plaintiffs are entitled to the total claimed expenses for court costs. Therefore, the Court awards Oakley plaintiffs $1.305.00 in court costs.

For the above reasons, the Court grants Oakley plaintiffs' motion for attorney fees and court costs and first amended motion for attorney fees and court costs (Dkt. Nos. 22, 24). Based on review of the motions, the Court concludes that Oakley plaintiffs are entitled to $4,022.50 in attorney fees and $1,305.00 in court costs.

**VI.    Oakley Plaintiffs' Motion To Tender Funds**

The Court next addresses Oakley plaintiffs' complaint and motion to tender funds and for an injunction under 28 U.S.C. § 2361, attorney fees, and costs (Dkt. Nos. 1, 19). In the complaint, Oakley plaintiffs request that the Court enter an Order pursuant to Federal Rule of Civil Procedure 67, directing Oakley plaintiffs to deposit proceeds of grain into the registry of the Court to be distributed to the appropriate party or parties as determined by the Court (*Id.*, ¶ 21).

Pursuant to the complaint filed by Oakley plaintiffs, and for the reasons explained in this Order, it is ordered that:

1.    Oakley plaintiffs are authorized to deposit the $54,053.00 in its possession, that is in issue in this case, into the registry of the Court. Oakley plaintiffs are hereby directed to issue and deliver a check payable to the Clerk of the United States District Court for the Eastern District

---

[1] The Court calculated counsel's award of attorney fees based on 16.09 hours of work (1.2, .83, and 1.17 hours subtracted from 19.29 total hours), at a rate of $250.00 an hour.

of Arkansas in the amount of $54,053.00, clearly marked as funds at stake in this case by including the case number, along with a copy of this Order.

2. The Clerk of the Court is directed to invest the sum of $54,053.00 in an interest bearing account pursuant to Local Rule 67.1 of the United States District Court for the Eastern and Western Districts of Arkansas, until further advised. The Clerk of the Court is further directed to deduct from the income earned on the investment the appropriate fee, not exceeding that authorized by the Judicial Conference of the United States and set by the Director of the Administrative Office.

3. The interpleader defendants Mr. Shumate, G2, Mr. Pribil, JP Livestock, John Does, FCSA, and Mr. Weinmiller are restrained from instituting or prosecuting, or continuing to prosecute, against Oakley plaintiffs any action that affects the funds at issue in this case without first obtaining an Order from this Court. *See* 28 U.S.C. § 2361.

4. Pursuant to Local Rule 67.1, Oakley plaintiffs shall cause this Order to be served personally on the Clerk of the Court and the Financial Deputy of the Court. Oakley plaintiffs shall further cause this Order to be served on all parties within ten days of the entry of this Order.

**VII. Conclusion**

For the above reasons, the Court grants Oakley plaintiffs' motion to tender funds and for an injunction under 28 U.S.C. § 2361 (Dkt. Nos. 19, 20). The Court grants Oakley plaintiffs' motions for attorney fees and court costs and awards Oakley plaintiffs $4,022.50 in attorney fees and $1,305.00 in court costs (Dkt. Nos. 22, 24). The Court directs the Clerk to pay Oakley plaintiffs the awarded amount of attorney fees and court costs after the contested *res* is deposited with the Court. The Court refers the motion for partial default judgment against defendant Mr.

Weinmiller to the Clerk for consideration (Dkt. No. 38). The Court grants FCSA's motion to dismiss plaintiffs' interpleader complaint as to FCSA (Dkt. No. 34).

So ordered this 24th day of September, 2018.

_Kristine G. Baker_
Kristine G. Baker
United States District Judge